IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAAC MITCHELL, | ) | |
| Plaintiff, | ) | Civil Action No. 09 - 972 |
| | ) | |
| v. | ) | |
| | ) | Judge Terrence F. McVerry |
| JEFFREY A. BEARD, PH.D.; LOUIS S. FOLINO; CORRECTIONAL OFFICER RAMBLER; COUNSELOR HARRIS (JOHN DOE); DR. JIN (JOHN DOE); DR. JOHN DOES 1 AND 2; JANE AND JOHN DOES) SPECIALIST AND EXPERTS 3, 4, 5; JANE AND JOHN DOES; DR. CANTINO; DR. FOSTER; NURSE WRESTLER; NURSE 6; CORRECTIONAL OFFICERS JOHN DOES; DEPUTY MILLER; CUMBERLAND; WILLIAMS; BLACK; SHIRA; LT. WORKMAN; and JANE AND JOHN DOES 7, 8, 9, AND 10, | ) | Magistrate Judge Lisa Pupo Lenihan<br><br>Doc. Nos. 17 & 40 |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Partial Motion to Dismiss filed by the Pennsylvania Department of Corrections Defendants (doc. no. 40) be granted and that the Motion to Dismiss filed by the Medical Defendants (doc. no. 17) be granted. As a result, the only claims that will remain in this action are against DOC Defendants Black and Shira.

### II. REPORT

Plaintiff, Isaac Mitchell, a capital inmate incarcerated at the State Correctional Institution at Greene, Pennsylvania (SCI-Greene), commenced this action pursuant to the Civil Rights Act of

1

1871, 42 U.S.C. § 1983. Named as Defendants are present and/or former employees of the Pennsylvania Department of Corrections (DOC) and various medical personnel at SCI-Greene. Defendants Nurse Wrestler and Dr. Jin (the Medical Defendants) filed a Motion to Dismiss on December 11, 2009 (doc. no. 17). Defendants Beard, Folino, Rambler, Harris, Miller, Cumberland, Williams, Black, Shira, and Workman (the DOC Defendants) filed a Partial Motion to Dismiss on January 12, 2010 (doc. no. 40). For the reasons that follow, the motions should be granted.

### A. Standard of Review

Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) (doc. no. 49). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at

555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983. Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).[1] It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a

---

1. *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

§ 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

### B. Plaintiff's Allegations

Plaintiff alleges that he fell on June 13, 2001 as the result of Defendant Rambler failing to properly escort him up the stairs and that Defendant Harris failed to report the June 13, 2001 fall and failed to give him accurate information about paralegal assistance. Without giving specific dates to these claims, Plaintiff further alleges that Defendants Miller, Cumberland, and Williams assaulted him while on transport duty and that Defendants Black and Shira made him walk long distances against doctors' orders, which resulted in another fall on August 2, 2007. Plaintiff claims that Defendant Workman was made aware of the August 2, 2007 incident, but did nothing. Finally, Plaintiff alleges that defendants Beard and Folino knew or should have known of the above-described conduct by the DOC Defendants and failed to stop it.

Plaintiff contends that this conduct amounted to a civil conspiracy by the DOC Defendants to violate his Constitutional rights. Specifically, he alleges that the DOC Defendants denied him access to the courts, equal protection, and due process. Plaintiff further alleges that Defendants violated numerous provisions of the Pennsylvania Constitution.

### C. Limitations Periods

Defendants first argue that Plaintiff's claims regarding the June 2001 incident are time barred. In this regard, the limitations period for civil actions brought under 42 U.S.C. § 1983 is

4

determined by state law.[2] Under Pennsylvania law, the applicable limitations period for Plaintiff's claims is two years. *See* 42 Pa. Cons. Stat. § 5524.

The date when a civil rights action accrues (begins to run) is a matter of federal law. Albright v. Oliver, 510 U.S. 266, 280 n.6 (1994) (J. Ginsburg, concurring). A claim accrues when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the Defendant. *See* Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period); Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong).

Plaintiff's Complaint is signed and dated July 15, 2009. Due to the two-year limitations period, Plaintiff cannot impose liability against Defendants under 42 U.S.C. § 1983 based on events that occurred prior to July 14, 2007. The only claims in Plaintiff's claims that are alleged to have occurred after this date are the supposed events of August 2, 2007, which are addressed in the DOC Defendants' Partial Answer (doc. no. 42). All of the claims arising out of the June 13, 2001 fall occurred more than 6 years prior to the applicable statute of limitations in this case. Consequently, they are time-barred.

Anticipating this response, Plaintiff argues that the limitations period should be tolled. The United States Supreme Court has held that the statute of limitations is not tolled for a federal claim unless state law provides an applicable tolling rule or provision. Board Of Regents of University

---

2. *See* Goodman v. Lukens Steel Correctional Officer., 482 U.S. 656, 662 (1987) (42 U.S.C. § 1981); Wilson v. Garcia, 471 U.S. 261, 272-76 (1985) (42 U.S.C. § 1983); Bougher v. University of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989) (42 U.S.C. § 1985).

of New York v. Tomanio, 446 U.S. 478 (1980); Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000) (holding that the state's relevant tolling rules also apply to federal civil rights causes of action). Under Pennsylvania law, the statute of limitations only can be tolled based upon fraud or concealment. Lake, 232 F.3d at 366-367 (further noting that mental retardation is not a grounds for tolling the statute of limitations). In order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied. Montanya v. McGonegal, 757 A.2d 947, 951 (Pa. Super. 2000).

Here, Plaintiff filed a prior lawsuit at Civil Action No. 06-409 in the Western District of Pennsylvania regarding his fall down a staircase on June 13, 2001 and the medical care he received in response thereto. On August 21, 2007, I recommended that the defendants' motions to dismiss be granted finding that Plaintiff had failed to state a claim. The Honorable Terrence F. McVerry adopted the report and recommendation on September 18, 2007. The record in Civil Action No. 06-409 shows that Plaintiff was fully aware of his claims at the time he filed his 2006 lawsuit. Consequently, Plaintiff's claims regarding events that occurred prior to July 14, 2007 are barred by the statute of limitations.

### D. Preclusion

Moreover, Plaintiff is precluded from pursuing the instant action against Defendants Rambler, Harris, Miller, Cumberland, and Williams under the doctrines of claim preclusion and issue preclusion. "Issue preclusion" (also known as collateral estoppel) bars relitigation of issues adjudicated in a prior action. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1074 (3d Cir. 1990). Under issue preclusion, a plaintiff is prevented from pursuing an issue provided the

following four conditions are met.

    1.    The issue is the same as that involved in a prior action.

    2.    The issue actually was litigated.

    3.    The issue was determined by a final and valid judgement.

    4.    The determination was essential to the prior judgment.

Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1231-32 (3d Cir. 1995) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). Complete identity of parties in the two suits is not required for the application of issue preclusion. *Id*. at 1232.

    Plaintiff's civil action docketed at Civil Action No. 06-409, satisfies all four conditions for applying the doctrine of issue preclusion. In that action, Plaintiff alleged the same set of facts as he alleges in the instant complaint. Plaintiff's complaint was dismissed by a final and valid judgement on the basis that Plaintiff failed to show that Defendants were liable under 42 U.S.C. § 1983. Accordingly, Plaintiff is precluded from relitigating his claims in the present action under the doctrine of issue preclusion.

    Moreover, under the doctrine of claim preclusion, Plaintiff is precluded from seeking recovery in the instant action under any new theory of liability that he did not raise in his previous action. "Claim preclusion" (also known as res judicata) gives dispositive effect to a prior judgment if the particular issue, albeit not litigated in the prior action, could have been raised. Swineford v. Snyder County Pennsylvania, 15 F.3d 1258 (3d Cir. 1994). In his previous civil rights action, Plaintiff could have pursued all of the claims that he raises in the present action (with the exception of his claims concerning August 2, 2007). Accordingly, Plaintiff is barred from raising any claims that he could have raised in his previous lawsuit.

**E. Liability under 42 U.S.C. § 1983**

Plaintiff seeks to assert liability against Defendants pursuant to the Civil Rights Act, 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990). Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that

8

results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id*. (quoting Chinchello, 805 F.2d at 133). *See also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

Here, Plaintiff seeks recovery against Defendants Workman, Beard, and Folino solely on the basis of their positions as supervising officials. Plaintiff does not allege that any of these Defendants had any knowledge of, or personal involvement the actions that form the basis of his complaint. He does not allege that any of these Defendants participated in any way whatsoever in the alleged actions, as supervisors or otherwise. Nor does he allege any indirect involvement that would imply that any of these Defendants acquiesced in the alleged unconstitutional misconduct. Simply stated, none of Plaintiff's allegations establish that these defendants were responsible for, or even aware of, his concerns.

Contrary to Plaintiff's assertions, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement. Rode, 845 F.2d at 1208. Moreover, mere concurrence in a prison administrative appeal process does not implicate a constitutional concern. Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983). *See also* Bullock v. Horn, Civil No. 3-991402, 2000 WL 1839171, *5 ((M.D. Pa., Oct. 31, 2000) ("Merely asserting that Plaintiff sent letters to these two defendants will not suffice. Indeed, it would be anomalous to suggest that a prisoner could name as a Defendant any governmental official whatsoever, no matter how far

9

removed in the chain of authority from the actual conduct in question, simply by sending that official a letter."). It is not acquiescence for Defendants to do their jobs; nor are they liable because the plaintiff was dissatisfied with their conclusions. Moreover, there is no substantial allegation against defendants Workman, Beard, and Folino to establish that they did anything more or less than required by their duty. Plaintiff's claims merely are insufficiently cursory and conclusory. Mere knowledge of a plaintiff's complaints and a finding adverse to a plaintiff do not indicate acquiescence. There is no evidence, but simply bald allegations, that any of these defendants exceeded their authority or acted improperly in exercising that authority. Accordingly, his Complaint does not state a cause of action against Defendants Workman, Beard, and Folino and the action against them should be dismissed. *Accord* Alexander v. Forr, Civil No. 04-370, 2006 WL 2796412, 19-20 (M.D. Pa. Sept. 27, 2006).

## F. Conspiracy

In addition, Plaintiff claims that Defendants engaged in a conspiracy to deny him his constitutional rights. To state a claim of conspiracy, the plaintiff must provide factual allegations that demonstrate collusion or concerted action among the alleged co-conspirators. Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)); Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991), *later proceeding*, Young v. Quinlan, 960 F.2d 351 (3d Cir. 1992). Specifically, the allegations must address "the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspiracy taken to achieve that purpose. . . ." Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989) (quotation omitted). Even though the Supreme Court held in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993), that the allegations in a

section 1983 complaint cannot be held to a standard of heightened specificity, a plaintiff must allege conspiracy with some particularity. Bieros v. Nicola, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing Leatherman, 507 U.S. at 168). Thus, a complaint stating a conspiracy claim must "flesh out in some detail the nature of the scheme." Loftus v. Southeastern Pennsylvania Transportation Authority, 843 F. Supp. 981, 988 (E.D. Pa. 1994). "While the pleading standard under [Fed.R.C.P.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements." Loftus, 843 F. Supp. at 987.

Plaintiff states that the Defendants have conspired to violate his constitutional rights yet he has failed to allege any facts showing an agreement or plan formulated and executed by the Defendants to achieve this conspiracy. Absent allegations showing some details of an agreement to deny his rights, Plaintiff has failed to allege a claim of a conspiracy. "A court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). *Cf.* D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1376 (3d Cir. 1992) ("[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim.") (quotation omitted), *cert. denied*, 506 U.S. 1079 (1993).

Although this Court is required to construe *pro se* pleadings liberally, it is not permitted to assume the role of the Plaintiff's advocate. A plaintiff must at least outline the facts constituting each alleged violation for which he or she seeks relief. Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 39 (1st Cir. 1992). Plaintiffs allegations fail to set forth any facts showing an agreement or plan formulated and executed by Defendants to achieve a conspiracy. His conclusory allegations of conspiracy are insufficient to state a claim upon which relief may be

granted.

## G. Access to Courts

Plaintiff makes various allegations that Defendants violated his right of access to the courts. The right of access to the courts is guaranteed by the First Amendment of the United States Constitution. In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828. However, in Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court effectively repudiated much of its prior holding in Bounds. In Lewis, the Supreme Court held that Bounds did not recognize an independent right in prisoners to have an adequate law library; instead, it concerned the established right of access to the courts. Lewis 518 U.S. at 351. Thus, the Lewis Court held that, in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library provided was inadequate or he was denied access either to the law library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm.

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." Id. The second requirement requires a plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. Id. at 414.

Here, Plaintiff has failed to identify any legal action he was unable to pursue as a result of Defendant's alleged actions. Nor has he alleged a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Thus, Plaintiff has failed to state a claim upon which relief may be granted regarding his right of access to the courts.

**H. Equal Protection**

Plaintiff also claims violations of his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification. Classifications involving suspect or quasi-suspect class, or impacting certain

13

fundamental constitutional rights, are subject to heightened or "strict" scrutiny. City of Cleburne, 473 U.S. at 439. Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge. F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts); Chapman v. United States, 500 U.S. 453, 465 (1991).

Moreover, to demonstrate an equal protection violation, an inmate has the burden of proving the existence of purposeful discrimination. Hernandez v. New York, 500 U.S. 352 (1991); McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Official action does not violate the Equal Protection Clause solely because it results in a disproportionate impact; proof of discriminatory intent or purpose is required to show a violation. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977); Washington v. Davis, 426 U.S. 229, 239 (1977); Stehney v. Perry, 101 F.3d 925, 938 (3d Cir. 1996). Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. Hernandez, 500 U.S. at 360. An inmate must offer evidence specific to his own case that would support an inference that unlawful considerations played a part in the adverse decision. McCleskey, 481 U.S. at 293.

Here, Plaintiff fails to allege that Defendants purposefully discriminated against him. Accordingly, he fails to state a claim upon which relief may be granted under the Equal Protection Clause.

## I. Due Process

Plaintiff's further alleges a violation of his due process rights. The Due Process Clause of the Fourteenth Amendment guarantees fair procedure for the deprivation of a constitutionally-protected interest in life, liberty or property. Notwithstanding, the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented is whether Defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation. *See, e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne

15

v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992).

Here, the only allegation that suggests a due process violation concerns Plaintiff's disciplinary action where he was found guilty of failing to obey an order to wheel himself back to his cell after he had been to the library. It is clear that his claim does not impact a liberty interest inherent in the Constitution. Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest. In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added). Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

First, it must be noted that a prisoner does not have a constitutional right to be free from

being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). In other words, the mere filing of false charges against an inmate does not constitute a per se constitutional violation. *Id*. Before the Supreme Court handed down its opinion in Sandin, the federal courts had determined that the filing of unfounded administrative charges against an inmate may result in a procedural due process violation only when such charges were not subsequently reviewed in a hearing. *Id*. at 952. Thus, even if false charges impaired a protected liberty interest, as long as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of unfounded charges did not give rise to a procedural due process violation actionable under section 1983. *See* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002); Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995); Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988).

In light of the Supreme Court's ruling in Sandin, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing a false report. Specifically, in deciding whether a protected liberty interest exists under Sandin, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). In this case, the record shows that Plaintiff was found guilty of only a Class II violation. Inmates found guilty of Class II misconduct charges are subject to sanctions except placement in DC status and loss of pre-release status. DC-ADM 801, Section 4. The Court of Appeals for the Third Circuit has held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin.

17

*See* Young v. Beard, 227 Fed. Appx. 138 (3d Cir. 2007). Thus, it is unlikely that the filing of false charges, even in the absence of a hearing, would state a constitutional claim on the facts before this Court. Consequently, Plaintiff has failed to allege a violation of his rights as protected by the Due Process Clause.

## J. State Law Claims

As a final matter, Plaintiff's state law claims should be dismissed against the Commonwealth Defendants (with the exception of Black and Shira at this stage) on the basis of sovereign immunity. In this regard, the Commonwealth of Pennsylvania, and its officials and employees acting within the scope of their duties, enjoy sovereign and official immunity unless the General Assembly specifically waives the immunity. 1 Pa. Cons. Stat. § 2310. DOC and its employees are protected under the grant of sovereign immunity in 1 Pa. Cons. Stat. § 2310. Collins v. Bopson, 816 F. Supp. 335 (E.D. Pa. 1993) (under Pennsylvania law, corrections officers were statutorily immune from suit); Moore v. Commonwealth 114 Pa. Commw. 56, 538 A.2d 111 (1988), *appeal dismissed sub nom.*, 523 Pa. 418, 567 A.2d 1040 (1990).

Thus, the Commonwealth defendants enjoy sovereign immunity from plaintiff's state law claims unless they come within the nine exceptions to immunity specified by the Pennsylvania legislature in 42 Pa. Cons. Stat. Ann. § 8522:

      (1)    vehicle liability;

      (2)    medical-professional liability;

      (3)    care, custody or control of personal property;

      (4)    real estate, highways and sidewalks;

      (5)    potholes and other dangerous conditions;

(6) care, custody or control of animals;

(7) liquor store sales;

(8) national Guard activities; and

(9) toxoid and vaccines.

42 Pa. Cons. Stat. Ann. § 8522(b).[3]

Plaintiff's state law claims against the DOC Defendants (except Black and Shira) are not within the narrow exceptions set forth in 42 Pa. Cons. Stat. § 8522(b). Thus, Plaintiff's state law claims should be dismissed with prejudice as against the Commonwealth Defendants (except Black and Shira). *Accord* Moore, 538 A.2d at 111 (allegations against prison superintendent did not fall within statutory waiver of sovereign immunity for medical-professional liability). *Cf*. Shoop v. Dauphin County, 766 F. Supp. 1327, 1334 (M.D. Pa. 1992) (state trooper had statutory immunity from suit with regard to pendent state law claims of false imprisonment, assault and battery, malicious abuse of legal process and intentional infliction of emotional distress, even though plaintiffs were alleging commission of intentional tort), *aff'd*, 945 F.2d 396 (Table) (3d Cir. 1991), *cert. denied*, 502 U.S. 1097 (1992).

## III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Partial Motion to Dismiss filed by the Pennsylvania Department of Corrections Defendants (doc. no. 40) be granted, that the Motion to Dismiss filed by the Medical Defendants (doc. no. 17) be granted. As a result, the only claims that will remain in this action are against DOC Defendants Black and Shira.

---

3. Pennsylvania law holds that the exceptions to sovereign immunity are to be narrowly interpreted. *See* Mascaro v. Youth Study Center, 514 Pa. 351, 523 A.2d 1118, 1123 (1987).

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

Dated: June 30, 2010

                                                Lisa Pupo Lenihan
                                                U.S. Magistrate Judge

cc:      Terrence F. McVerry
          United States District Judge

          Isaac Mitchell
          EG-7580
         175 Progress Drive
          SCI Greene
          Waynesburg, PA  15370

          Counsel of Record